UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re:** | : | |
| | : | Chapter 11 |
| **CHATEAU CREOLE APARTMENTS, LLC,** | : | Case No. 24-10608 |
| | : | |
| **Debtor.** | : | Section A |
| | : | |

### FEDERAL NATIONAL MORTGAGE ASSOCIATION'S MOTION FOR CONTEMPT

Federal National Mortgage Association ("Fannie Mae") moves this Court for a finding of civil contempt against Damon J. Baldone ("Baldone"). Baldone has committed fraud upon this Court and continues to violate the *Order Confirming the Amended Plan of Reorganization as of October 10, 2018 with Immaterial Modifications as of February 5, 2019* (the "Confirmation Order"), entered in a prior bankruptcy case initiated by Chateau Creole Apartments, LLC ("Debtor" or "Chateau"), also the Debtor in the pending Chapter 11 proceeding.

### PRELIMINARY STATEMENT

1.  Fannie Mae seeks a finding of civil contempt and other relief afforded to it under the Bankruptcy Code against Debtor and its key principal, Baldone. The current matter involves Debtor's second time seeking Chapter 11 protection within the last six (6) years. Debtor first sought Chapter 11 relief in January of 2018 in the first bankruptcy styled *In re Chateau Creole Apartments, LLC*, Chapter 11, Case No. 18-10148, Section "A" (the "First Bankruptcy Case"). Debtor then filed a fully negotiated *Amended Plan of Reorganization as of October 10, 2018 with Immaterial Modifications as of February 5, 2019* (the "Amended Plan of Reorganization"), which was agreed among the Debtor, Baldone, and Fannie Mae. *See* First Bankruptcy Case, at [R. Doc.

1

No. 192]. The Amended Plan of Reorganization was subsequently incorporated into the Confirmation Order entered by the Court. *See* First Bankruptcy Case, at [R. Doc. No. 198]. The Amended Plan of Reorganization specifically provided that "Baldone shall not pledge or assign his membership interests in the Debtor and shall otherwise comply with the Acknowledgment and Agreement of Key Principal to Personal Liability for Exceptions to Non-Recourse Liability." *Id*. at p. 16.

2. Debtor again sought Chapter 11 relief on March 29, 2024 in its second bankruptcy proceeding, *In re Chateau Creole Apartments, LLC*, Chapter 11, Case No. 24-10608, Section "A" (the "<u>Second Bankruptcy Case</u>"). Through the Second Bankruptcy Case, Fannie Mae became aware of Baldone's unpermitted transfer of his interest in Debtor by way of his statement in the List of Equity Security Holders, [R. Doc. No. 3]. Additionally, Fannie Mae learned further details of Baldone's unpermitted transfer through separate, unrelated litigation pending in the 32nd Judicial District Court in Houma, Louisiana. Through this Motion and the contemporaneously filed Motion to Appoint a Chapter 11 Trustee, Fannie Mae, *inter alia*, seeks relief based upon violations of the Confirmation Order confirming the Amended Plan of Reorganization by Debtor and Baldone as impacting the ongoing administration of the Second Bankruptcy estate.

## JURISDICTION AND VENUE

3. The Debtor filed this case under Chapter 11 on March 29, 2024.

4. The Court has jurisdiction to grant the relief sought herein pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(1) & (2)(A).

5. Venue is appropriate under 28 U.S.C. §§ 1408 and 1409.

6. This Court also has jurisdiction to adjudicate a party in civil contempt. *See In re Bradley*, 588 F.3d 254, 265 (5th Cir. 2009); *In re Norris*, 192 B.R. 863, 872 (Bankr. W.D. La.1995),

*aff'd*, 114 F.3d 1182 (5th Cir.1997) (civil contempt proceedings arising out of core matters are themselves core matters); *In re Power Recovery Sys., Inc.*, 950 F.2d 798, 802 (1st Cir. 1991); *In re Skinner*, 917 F.2d 444, 447 (10th Cir.1990); *In re Walters*, 868 F.2d 665, 669 (4th Cir. 1989).

## BACKGROUND

7. On January 25, 2018, Debtor filed its first voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy court for the Eastern District of Louisiana, the First Bankruptcy Case.

8. Baldone came to this Court seeking relief during the First Bankruptcy Case as the 100% owner of the Debtor. *See* Equity List of Equity Security Holders, First Bankruptcy Case, at [R. Doc. No. 1], at p. 97 (wherein Baldone certified, under penalty of perjury, that he was the 100% equity security holder of Debtor).

9. Fannie Mae filed a proof of claim in the First Bankruptcy Case on April 24, 2018.

10. On January 2, 2019, while the First Bankruptcy Case was pending, Baldone sold his "right, title, and interest" in Debtor to Baldone Investment Group, LLC ("BIG"). A copy of the "Act of Sale Without Warranty" is attached as **Exhibit 1.**[1]

11. On the same day Baldone sold his "right, title, and interest" in Debtor to BIG, Debtor also filed the *Amended Plan of Reorganization as of October 10, 2018 with Immaterial Modifications as of January 2, 2019* (the "Plan of Reorganization"). First Bankruptcy Case, at [R. Doc. No. 152].

---

[1] At the time the Act of Sale Without Warranty was executed, Baldone owned ninety-seven percent (97%) membership interest in BIG. On December 23, 2018, he had sold his sister, Dana Norman ("Norman"), a three percent (3%) membership interest in BIG.

3

12. Subsequently, on February 5, 2019, and after extensive negotiations amongst Debtor, Baldone, and creditors (including Fannie Mae), Debtor filed the Amended Plan of Reorganization. First Bankruptcy Case, at [R. Doc. No. 192].

13. On February 20, 2019, the Bankruptcy Court entered the Confirmation Order. Pursuant to the Amended Plan of Reorganization that was incorporated into the Confirmation Order, the prior Fannie Mae Loan Documents were still in full force except as modified by the Plan. The incorporated Amended Plan of Reorganization provided, among other things:

> Except as specifically modified by this Plan, the Multifamily Note dated December 10, 2010, including exhibits thereto; the Acknowledgement and Agreement of Key Principal To Personal Liability For Exceptions to Non-Recourse Liability; and the Multifamily Mortgage, Assignment of Rents and Security Agreement . . ., including exhibits thereto, shall remain in full force and effect to secure the payment of the Secured Claim of Federal National Mortgage Association.

First Bankruptcy Case, at [R. Doc. No. 198], at p. 9. The Amended Plan further provided:

> On the Effective Date, any Equity Interests of the Equity Interest Holders, along with any security interest in the Equity Interests, shall be terminated and any certificates evidencing same shall be cancelled on the books of the Debtor. Further, on the Effective Date, Damon Baldone shall pay $25,000 to the Debtor and shall waive all unsecured claims he has against the Debtor in exchange for 100% of the membership units in the Reorganized Debtor. During the term of the Plan,[2] Damon Baldone shall not pledge or assign his membership interests in the Debtor and shall otherwise comply with the Acknowledgment and Agreement of Key Principal to Personal Liability for Exceptions to Non-Recourse Liability.

First Bankruptcy Case, at [R. Doc. 199], at pp. 15-16.

14. Then, on August 9, 2021, Baldone created a lien on Debtor's sole real estate asset when he, in his capacity as manager, executed a Multiple Indebtedness Mortgage, Pledge of Leases and Rents and Security Agreement (the "<u>Mortgage</u>") in favor of Lirette Investment Group, LLC

---

[2] *See* Confirmation Order dated February 20, 2019, providing for a four-year plan with no transfer provisions through February 20, 2023. Despite Fannie Mae's recent discovery of the unsanctioned transfers, the transfers occurred during the term of the plan.

("LIG"). The Mortgage was recorded in the mortgage records of Terrebonne Parish on November 22, 2022 at Instrument No. 1662750, Book 3387, Page 837, securing the note purportedly executed on August 9, 2021, in the principal amount of $20,000,000, by Damon J. Baldone, LLC in favor of LIG.[3]

15. Baldone later recorded an Act of Correction on October 20, 2023, Instrument No. 1680720, correcting the name of the Mortgagor from Damon J. Baldone, LLC to Chateau Creole Apartments LLC. The Multiple Indebtedness Mortgage, Pledge of Leases and Rents and Security Agreement, and the Act of Correction are attached as **Exhibit 2** *in globo*.

16. On June 17, 2022, Baldone sold his ninety-seven percent (97%) ownership interest in BIG to Norman for Fifty Thousand Dollars ($50,000). The "Act of Sale" is attached hereto has **Exhibit 3**.

17. The First Bankruptcy Case was closed on April 2, 2024.

18. On March 29, 2024, Debtor filed a second voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana, the Second Bankruptcy Case.

19. Debtor disclosed that BIG had 100% membership interest in the Debtor. [R. Doc. No. 3].

20. Since that time, Baldone has made various, inconsistent misrepresentations with respect to the ownership of the Debtor and/or collateral in this estate. In fact, it was not until a related evidentiary proceeding (*SBN V FNBC LLC v. Damon J. Baldone, et al.*, Case No. 196553, Division D, 32nd Judicial District Court of Louisiana Parish of Terrebonne (hereinafter, the "SBN

---

[3] *See* Objection to Disclosure Statement Filed by SBN V FNBC LLC ["SBN"] at [R. Doc. No. 145] calling into question the contemporaneous execution of the note.

5

Case")) that Baldone confirmed that he transferred ownership in violation of the Confirmation Order. The evidence from the SBN Case combined with the recent supplemental disclosures in the Insurance Cases[4] and Baldone's testimony in this case confirming his transfer of interest[5] have now caused Fannie Mae to seek an independent trustee under § 1104(a)(1) and (2).

21. Fannie Mae filed a proof of claim in the Second Bankruptcy Case on June 7, 2024.

22. The Debtor owns and manages real property and improvements consisting of 208 residential apartments located in Houma, Louisiana and known as Chateau Creole Apartments (the "Apartment Complex"). Baldone, a licensed attorney, purportedly manages the Apartment Complex.

23. Since the petition date of the Second Bankruptcy Case, the Debtor has continued in possession of its property and is operating and managing its business, as debtor in possession, pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case; however, a Motion to Appoint a Chapter 11 Trustee is being filed contemporaneously with this Motion.

## LAW AND ARGUMENT

24. "Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger,* 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R.R.*

---

[4] "Insurance Cases" refers to the two (2) insurance cases Damon J. Baldone, LLC has filed in Louisiana federal court seeking Hurricane Ida related damages to Debtor's estate: *Damon J. Baldone, LLC v. Starr Surplus Lines Insurance Company, et al*, 2:22-cv-01903-BSL-KWR (E.D. La.) and *Damon J. Baldone, LLC v. Starr Surplus Lines Insurance Company, et al*, 2:24-cv-00543-DJP-DPC (E.D. La.)).

[5] *See* [R. Doc. No. 120], at p. 10:1-4.

6

*Co.*, 370 U.S. 626, 630–31 (1962)). Among these powers is the ability to sanction "conduct which abuses the judicial process." *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)).

25. Section 105(a) of the Bankruptcy Code gives a bankruptcy court the power to, *sua sponte*, take any action or make any "determination necessary or appropriate to enforce of implement court orders or rules, or to prevent an abuse of process." Included in those powers is the ability to issue civil contempt orders. *See In the Matter of Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997). Bankruptcy courts also have inherent powers to impose sanctions where bad faith or willful abuse of process has occurred to ensure the orderly and expeditious disposition of their dockets. *See In re Carroll*, 850 F.3d 811, 815 (5th Cir. 2017) (citing *Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 411 (5th Cir. 1996)); *In re Cleveland Imaging & Surgical Hosp., L.L.C.*, 26 F.4th 285, 292 (5th Cir. 2022).

26. Bankruptcy Rule 9020 provides Bankruptcy Rule 9014 governs a motion for an order of contempt made by a party in interest. The Fifth Circuit has delineated the test for civil contempt. In *Piggly Wiggly Clarksville v. Mrs. Baird's Bakeries, Inc.,* 177 F.3d 380 (5th Cir.1999), the Court observed that the test for contempt requires the showing that (1) a court order was in effect; (2) the order required certain conduct; and (3) the respondent failed to comply with the order. In civil contempt, the burden of proof is clear and convincing, as opposed to preponderance of evidence. *See Travelhost, Inc. v. Blandford,* 68 F.3d 958 (5th Cir.1995).

**I. Baldone's Nondisclosure of His Transferred Interest
Prior to the First Bankruptcy's Confirmation Order**

27. Baldone knowingly failed to inform the Court or Fannie Mae that he transferred his interest in the Debtor to BIG on January 2, 2019, prior to the Confirmation Hearing. *See* Exhibit 1.

7

28. Baldone then misrepresented to the Court on January 2, 2019 and again on February 5, 2019, that he was the current equity interest holder of the Debtor. *See* First Bankruptcy Case, at [R. Doc. No. 152], at p. 9 and [R. Doc. No. 192], at p. 9 ("Mr. Damon Baldone, the **current equity interest holder** who also has an unsecured claim, will purchase a new membership interest in the reorganized Debtor for the sum of $25,000 paid to the Debtor on the Effective Date." (emphasis added)].

29. The Amended Plan of Reorganization was a fully negotiated Plan amongst Debtor, creditors (including Fannie Mae), and Baldone, and Baldone filed that Amended Plan of Reorganization fully aware that he, in his individual capacity, no longer owned Debtor.

30. Baldone then testified at the Confirmation Hearing on February 6, 2019 that he was "the owner of Chateau Creole Apartments, LLC[,]" and that he was the sole member of the company. First Bankruptcy Case, at [R. Doc. No. 226], at 27:10-13.

31. Baldone, thus, deceived this Court and Debtor's creditors by representing that he was the owner and current equity interest holder of Debtor, when, in fact, he had transferred his membership interests in Debtor to BIG.

32. The transfer of his individual interest in Debtor was in direct violation of the Amended Plan of Reorganization that Debtor presented to this Court and which was ultimately confirmed by this Court.

II. **Baldone's Failure to Effectuate the Amended Plan of Reorganization**

33. Subsequently, on February 20, 2019, the Confirmation Order in the First Bankruptcy Case was entered and incorporated the Amended Plan of Reorganization. As previously described, that incorporated Amended Plan of Reorganization required Baldone to terminate any and all interests in the Debtor and retain 100% ownership of Debtor. Further,

Baldone was to pay $25,000 to Debtor in exchange for 100% ownership of the membership units in the Reorganized Debtor.

34. Here, Baldone has testified on numerous occasions that his sister, Norman, through BIG, is the current owner of Chateau Creole Apartments, LLC.[6] Baldone has also presented to this Court that he has no ownership interest in BIG.[7] Moreover, even though the Amended Plan of Reorganization provides that the January 2, 2019 "Act of Sale Without Warranty" that resulted in Baldone selling his interest in Debtor to BIG was extinguished, Baldone has not acted as though that termination occurred. Since the First Bankruptcy Case, Baldone has testified that Norman, through BIG, is the owner of Debtor.

35. Thus, Baldone did not terminate all security interests that BIG had in Debtor prior to the Confirmation Order, and Baldone failed to cancel all equity interests in the Debtor. Instead, Baldone has continued to rely on that January 2, 2019 transfer of Debtor to BIG (which occurred before the Confirmation Order). And now, through this Second Bankruptcy Case, Baldone seeks Chapter 11 protection for a Debtor allegedly still owned by BIG to which Baldone transferred his interests in direct violation of the First Bankruptcy Case's Confirmation Order which incorporated the Amended Plan of Reorganization and in violation of the Loan Documents still in full force after the Confirmation Order. *See* First Bankruptcy Case, at [R. Doc. No. 198].

---

[6] Baldone's attorney for the Insurance Cases, Cate Biggs, has recently disclosed BIG has been the owner of the Debtor since 2019. *See* **Exhibit 4**.

[7] *See* Exhibit 1, Transcript of 341 Meeting of Creditors; *see also* Exhibit 3. Thus, Baldone has no ownership interest in the Debtor. Rather, and as he has testified, he is only the manager of Debtor. [R. Doc. No. 3].

36. In addition to Baldone's failure to maintain 100% ownership of Debtor as required by the Amended Plan of Reorganization, there is no evidence that Baldone paid $25,000 to Debtor as required by the Amended Plan of Reorganization.

37. Baldone violated the Confirmation Order with the incorporated Amended Plan of Reorganization as well as the restrictions of Fannie Mae's Loan Documents when he, in his capacity as manager, granted the Mortgage to LIG. The Amended Plan of Reorganization provided:

> Except as specifically modified by this Plan, the Multifamily Note dated December 10, 2010, including exhibits thereto; the Acknowledgement and Agreement of Key Principal To Personal Liability For Exceptions to Non-Recourse Liability; and the Multifamily Mortgage, Assignment of Rents and Security Agreement . . ., including exhibits thereto, shall remain in full force and effect to secure the payment of the Secured Claim of Federal National Mortgage Association.

First Bankruptcy Case, at [R. Doc. No. 198], at p. 9.

38. Furthermore, it is important to note that the Mortgage was part of a fraudulent scheme engaged in by Baldone to shield his assets from creditor SBN V FNBC LLC, a creditor in the Second Bankruptcy Case.[8] At no time did LIG provide the consideration recited in the Mortgage. And, although the Mortgage references a promissory note from Mortgagor or Borrower, no promissory note from the Debtor to LIG exists.

---

[8] SBN recently obtained a preliminary injunction against Baldone. *See* SBN Case. In the SBN Case, the court found beyond "a preponderance of the evidence … that the transactions by and between LIG and Lirette, [insiders in this proceeding] and Baldone, Baldone LLC, BIG, and/or Baldone APLC on or after August 9, 2021… should be annulled." *See* **Exhibit 5**, Reasons for Judgment, at pp. 33-34. Specifically, the annulment refers to the Mortgage as described above.

### III. Baldone Should be Found in Contempt.

39. Baldone, despite being an experienced attorney and an officer of the Court, knowingly misrepresented his interest in Debtor and willfully violated the Confirmation Order by disregarding the requirements of the Plan of Reorganization.

40. Baldone willfully deceived the Court and the creditors. Further, Baldone willfully and knowingly violated terms of the Confirmation Order by ignoring the requirements of the Amended Plan of Reorganization even before the consummation of the Plan of Reorganization and the resulting Confirmation Order.

41. Moreover, Baldone continues to disregard the Confirmation Order by violating the Amended Plan of Reorganization and the restrictions of the Fannie Mae Loan Documents. *See* Fannie Mae's Proof of Claim for Second Bankruptcy Case Security Agreement at Exhibit 4, at p. 6 (wherein "Transfer" is defined) and Section 21(a)(2) at p. 26 (Transfers of Mortgaged Property or Interests in Borrower).

42. Accordingly, Fannie Mae requests this Court to find Baldone in contempt of the Confirmation Order that was in effect by violating the Amended Plan of Reorganization and impose civil contempt sanctions or any other relief that the Court deems appropriate.

WHEREFORE, Fannie Mae requests that this Honorable Court enter an order (i) finding Baldone in continuous contempt of the Confirmation Order for violating the Plan of Reorganization, and impose civil contempt sanctions or any other relief that the Court deems necssary as will be established at the hearing on this matter.

Dated this 6th day of November, 2024.

BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC

*/s/ Edward H. Arnold, III*
Edward H. Arnold, III (La. Bar No. 18767)
Katie L. Dysart (La. Bar No. 31449)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone (504) 566-5204
Facsimile (504) 636-4000
harnold@bakerdonelson.com
kdysart@bakerdonelson.com

**ATTORNEYS FOR FEDERAL NATIONAL MORTGAGE ASSOCIATION D/B/A FANNIE MAE**